UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MERILEE GERTH,

                              Plaintiff,

                                                                                                          03 Civ. 3708 (PKC)

                                                                                                      MEMORANDUM
                                                                                                        AND ORDER

               -against-

UNITED STATES OF AMERICA, GENERAL
MOTORS CORPORATION, and
CARTER & SONS,

                              Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Merilee Gerth brings this action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 (2000), ("FTCA"), against the United States of America (the "Government") and asserts common law tort claims against General Motors Corporation and Carter & Sons, ("Carter").[1]  Plaintiff contends that a defect in the design of a canopy attachment to a United States Postal Service ("USPS") mobile post office vehicle caused the canopy to fall on and injure her.  Plaintiff properly first filed a claim with the USPS which, thereafter, was denied.  She then timely filed the Complaint in this action on May 23, 2003 and amended it on October 7, 2003.  This case was assigned to the late Honorable Richard Conway Casey and reassigned to the undersigned on May 21, 2007.

        Discovery in this action is closed and the Government now moves for summary judgment on all claims asserted against it.  The Government contends that this court lacks subject matter jurisdiction because the method by which the canopy was attached to the mobile post

---

[1] General Motors was dismissed from this action by a stipulation entered as an Order on July 1, 2004.

office was designed by an independent contractor which deprives this court of jurisdiction under the FTCA. Plaintiff opposes defendant's motion, contending that the Government should be equitably estopped from asserting the independent contractor defense. Alternatively, plaintiff argues that the government has failed to present proof of its non-liability and that there are disputed material facts precluding summary judgment. In addressing the Government's motion, I have considered only plaintiff's version of the facts and such other facts as are not disputed by the plaintiff. For the reasons discussed below, the Government's motion is granted.

    A.    BACKGROUND

In the late 1980s, USPS decided to convert twenty-eight of its regular mail delivery trucks into mobile post offices ("MPO"). A MPO is a modified USPS vehicle with a window-like opening in the side of the truck through which a customer may transact postal business. The window is covered by a canopy which is raised to reveal the window during operation and then folded down to cover the window when the MPO is not in use. (Papesca Dec. ¶ 3) When the canopy is open, it is supported on both sides by two rigid, gas-charged struts. (Aronov Dec. Exh. F) The struts are connected on one end to the steel frame of the canopy and on the other end to the frame of the window opening. (Fogleman Dec. Exh. A) The strut end which is attached to the window frame is attached to a bracket which, in turn, is secured to the window frame using four 1/8 inch diameter rivets which pass through holes in both the bracket and the frame. (Aronov Dec. Exh. F) The rivets are then covered with washers. (Id.)

Gerth alleges that on March 23, 2001 at approximately 12 noon she was waiting in the line of a USPS MPO which was parked at the intersection of South End Ave and Liberty Street in Manhattan. (Amended Complaint ("AC") ¶ 1) The canopy was open to expose the window and permit transactions to occur. While Gerth was standing at the window, wind caused

the strut end which was attached to the window frame to become detached from the MPO which, in turn, caused the canopy to drop, striking Gerth in the back of the head, "suddenly, violently, and without warning." (AC ¶ 22; Aronov Dec. Exh. F)  Gerth alleges that she has suffered great pain from injuries to her head and body and seeks $3 million from defendants. (AC ¶¶ 26-27)

Prior to placing a full order for all twenty-eight MPOs, USPS hired PL Custom Body & Equipment Co., ("PL") to create and produce three MPOs to serve as prototypes. (Smock Dep. 19-21)  PL produced three MPOs with vehicle identification numbers ("VIN") 7501275, 7501256, 7501266. (Id. at 22)  The MPO at which Gerth was waiting to be served was VIN 7501302 and not one of the vehicles produced by PL. (Id.) When USPS ordered the prototypes for the MPOs, they supplied certain drawings and plans for the construction of the MPOs. (Smock Dep. at 34-35; Fogleman Dec. Exh. C)  USPS did not provide specific instructions or drawings regarding the attachment of the struts to the canopy or vehicle. (Smock Dep. 36)

Following the completion of the three prototype MPOs by PL, USPS sought bids from competing contractors for the remaining twenty-five MPOs.  The three prototype vehicles were not immediately placed into service but were examined by the bidding contractors. (Papesca Dec. ¶ 6)  In addition to examining the vehicle, bidding contractors were given an information packet which contained drawings done by PL so that bidders might have a clearer picture of the MPO prior to bidding. (Fogleman Dec. Exh. F; Smock Dep. 43-44)  The drawings provided by PL, and ultimately by USPS to bidding contractors, contained PL's design for attachment of the struts to the canopy and window. (Fogleman Dec. Exh. F at 17)  While PL submitted a bid, it was not ultimately awarded a contract. (Smock Dep. 70)  Instead, the bid was awarded to Wetler Corporation ("Wetler") which produced all remaining MPOs.  Counsel for the

- 4 -

Government initially informed plaintiff that the bid had been awarded to Carter & Sons but later learned, and reported to plaintiff, that the contract had been awarded to Wetler. (Papseca Dec. ¶ 8, Exh. A)  It appears that Wetler Corporation filed for bankruptcy in the District of New Jersey in 1996 and is no longer in existence. In re Wetler Corp., 96-12093 (Bankr. D. N.J.)

Plaintiff contends that the MPO canopy collapsed "due to the insufficiency of its mounting hardware" which could not support the weight of the canopy during normal wind activity.  (Pl. 56.1 in Opp. at 10)  The wind speed on the date of plaintiff's accident was between 15 and 21 miles per hour. (Aronov Dec. Exh. G)  According to plaintiff's expert, Dr. Joseph F. Shelley, on the day that plaintiff was injured "a wind gust suddenly caused both struts brackets to be pulled away from the truck body, with the result that the heavy canopy suddenly dropped downward." (Aronov Dec. Exh. F at 3)  The canopy fell because "the existing method of attachment of the strut brackets to the window frame of the mobile post office truck is a defective design." (Id. at 10)  The defective design "was the direct cause of the collapse of the raised canopy, and of the resulting injury to Merilee Gerth." (Id.)

B.    SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P..  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief.  A fact is material if it "might affect the outcome of the suit under the governing law . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The evidence on each material element must be sufficient to entitle

the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met its initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant.  Rule 56(e), Fed. R. Civ. P.  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslandis v. U.S. Lines, Inc., 477 U.S. 242, 252 (1986)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (quotations and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants.  Rule 56(c), Fed. R. Civ. P.  Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587)); see also Anderson, 477 U.S. at 249-50 (noting that summary judgment should be granted if the evidence is "merely colorable"

or "not significantly probative"). In the absence of any disputed material fact, summary judgment is appropriate. Fed. R. Civ. P. 56(c).

    C.    <u>DISCUSSION</u>

        a.   <u>This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims Under the FTCA</u>

Under the principal of sovereign immunity, it is "axiomatic . . . that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'" <u>Adeleke v. United States</u>, 355 F.3d 144, 150 (2d Cir. 2004) (quoting <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983)). The FTCA operates as a limited waiver of sovereign immunity, permitting suits against the United States for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b). The term an "employee of the Government" is statutorily defined as "officers or employees of any federal agency . . . ." 28 U.S.C. § 2671. Section 2671 makes clear that the term "federal agency . . . does not include any contractor with the United States."

Federal law governs the determination of whether an individual is an employee of the Government or an independent contractor. <u>See</u> <u>Leone v. United States</u>, 910 F.2d 46, 49 (2d Cir. 1990) (citing <u>Logue v. United States</u>, 412 U.S. 521, 528 (1973)). The distinction between the employee and the independent contractor requires that the Courts determine the "power of the Federal Government to control the detailed physical performance of the contractor," <u>United States v. Orleans</u>, 425 U.S. 807, 814 (1976)(internal citation or quotation omitted) and whether the Government supervises the day-to-day operations of the contractor, <u>B & A Marine Co., Inc. v. American Foreign Shipping Co.</u>, 23 F.3d 709, 713 (2d Cir. 1994), <u>cert. denied</u>, 513 U.S. 961 (1994). Where the federal government cannot "control the detailed physical performance of the

contractor," or its day-to-day operations, it cannot be held liable for the negligent acts of the contractor's employees. Logue, 412 U.S. at 528.  Further, merely controlling work "in order to insure that it is satisfactorily completed in accordance with the requirements of the contract does not of itself make the hirer of an independent contractor liable for harm resulting from negligence in conducting the details of the work." Gallagher v. United States Lines Co., 206 F.2d 177, 179 (2d Cir. 1953), cert. denied, 346 U.S. 897 (1953).

If "the injuries alleged in a complaint were caused by an independent contractor, the FTCA does not waive sovereign immunity for that claim, and it must be dismissed for lack of subject matter jurisdiction." Fisko v. U.S. Gen. Servs. Admin., 395 F.Supp.2d 57, 62 (S.D.N.Y. 2005)(citing Orleans, 425 U.S. at 814).  Because the United States may only be sued following a waiver of sovereign immunity, attention and adherence to the exceptions to the waiver are critical. See Dalehite v. United States, 346 U.S. 15, 30-31 (1953).  A plaintiff who asserts that the court has subject matter jurisdiction over an action bears the burden of demonstrating, by a preponderance of the evidence, that such jurisdiction exists. See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).  Therefore, despite plaintiff's assertion otherwise, the burden is on plaintiff, not the Government, to demonstrate that the independent contractor exception does not apply. Plaintiff has failed to meet this burden and therefore failed to establish that this Court has subject matter jurisdiction over plaintiff's claim.

Because there is no dispute that USPS did not actually construct the MPO, the only viable theory against the Government is that it, as opposed to the contractor, designed the canopy attachment.  Plaintiff, seemingly relying on the documents generated by PL and provided by USPS as part of the bidding package, asserts in a conclusory fashion that the drawings are "engineering minutiae" that "speaks for itself."  However, even if USPS did intend to adopt as its

own the PL drawings provided in the bid package, it does not control the outcome of the motion. (Fogelman Dec. Exh. A, F)  Experts for both plaintiff and the Government agree that the rivets used to attach the struts to the window frame of the vehicle were the cause of the accident. (Fogelman Dec. Exh. A; Aronov Dec. Exh. F)  Wetler chose to attach the canopy using rivets, a method different from the PL prototype and not required by any drawing or specification included in the bid package.  PL's choice to use screws to attach the struts to the vehicle was an engineering decision by the independent contractor. (Smock Dep. 34-42)  The same is true for Wetler's choice to use rivets.

Plaintiff has failed to come forward with any evidence that USPS controlled the detailed performance of the MPO contract or the day-to-day operation of Wetler.  Drawing all reasonable inferences in plaintiff's favor, no reasonable factfinder could conclude that plaintiff's injury was caused by the Government or its employees; rather, if there were negligence or a wrongful act or omission, it would have been that of an independent contractor.

b.  <u>Equitable Estoppel is Not Warranted in This Case</u>

Plaintiff contends that even if the independent contractor exception is applicable, the Government should be equitably estopped from invoking it because the Government mislead plaintiff as to the identity of the contractor until the statute of limitations on a claim against Wetler had expired.  However, "the principle of equitable estoppel is not applied to the Government on the same terms as it is to private citizens." <u>United States v. Boccanfuso</u>, 882 F.2d 666, 669 (2d Cir. 1989).  Equitable estoppel may only be applied against the Government "in those limited cases where the party can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the

Government engaged in affirmative misconduct." City of New York v. Shalala, 34 F.3d 1161, 1168 (2d Cir. 1994)(citations omitted).

At the initial pretrial conference in this case held on September 12, 2003, the Government was directed to provide plaintiff with the vehicle identification number of the MPO at issue as well as the identity of the contractor who attached the canopy to the vehicle. On September 19, 2003, counsel for the Government responded, stating that Richard Papesca, Manager of Vehicle Maintenance for the New York District of the USPS, believed, "to the best of his recollection," that the vehicle had been converted to an MPO and the canopy installed by Carter. (Fogleman Dec. Exh. I) On December 9, 2004, counsel for the Government wrote to counsel for plaintiff, stating that USPS was unable to find any documentation to verify that Carter had performed the modifications and, that based upon conversations with Martin Smock, President of PL, USPS now believed that Wetler, not Carter, had converted the vehicle to an MPO and installed the canopy. (Fogleman Dec. Exh. J) The Government did not identify Wetler in its initial disclosures, which were "based on information now reasonably available." (Aronov Dec. Exh. K and L)

The Government's delay in informing plaintiff of the identity of the actual contractor does not rise to the level of affirmative misconduct. The document retention policy of USPS is to keep documents relating to projects for eight years after the completion of the project. (Gilligan Dec. ¶ 4, Exh. B) The contract awarded to Wetler was completed in 1990, and more than thirteen years had passed between completion of the project and initiation of this suit. As such, USPS no longer retained papers, including the contract, relating to MPOs produced by Wetler. (Gilligan Dec.¶ 5) The letter to PL stating that the contract had been awarded to Wetler was not in the possession or control of USPS but was produced in response to a subpoena served

on PL by the Government. (Fogelman Rep. Dec. Exh. 3, 4)  When the Government did learn of the letter's existence and the identity of the vendor performing the work, it promptly disclosed that information to plaintiff and produced documents it had uncovered that related to Wetler. The time between service of the subpoena and notification to plaintiff's counsel was merely five days. (Fogleman Rep. Dec. Exh. 3, 4)  Plaintiff has failed to demonstrate any affirmative misconduct on the part of the Government which would warrant estopping defendant from raising the independent contractor exception.

        c.   Even if Jurisdiction Were Proper, Plaintiff's Claim Would Fail

Even were I to conclude that there is jurisdiction over plaintiff's claim, either because estoppel is proper or because the independent contractor exception is inapplicable, plaintiff's design defect claim would fail.  Under the FTCA, courts are required to apply the substantive law of the state where the accident occurred. See Makarova v. United States, 201 F.3d 110, 114 (2d Cir. 2000) (citing Richards v. United States, 369 U.S. 1, 10-15 (1962)). Where a plaintiff has failed to demonstrate that defendant was, in fact, the designer of the object which caused plaintiff's injury, summary judgment on a design defect claim is proper under New York law. See, e.g., Ragusa v. Lincoln Ctr. for Performing Arts, Inc., 39 A.D.3d 294 (1st Dept. 2007); Hothan v. Herman Miller, Inc., 294 A.D.2d 333, 334 (2d Dept. 2002).  Here, no reasonable fact finder could conclude on the evidence in the record that any USPS design used rivets to attach the struts to the MPO.  Therefore, even if this Court had subject matter jurisdiction over plaintiff's claim, summary judgment would nevertheless be appropriate.

d.  Claims Against Carter are Dismissed Pursuant to Rule 4(m)

To date, no service of process has been made on Carter and the 120 day period provided in Rule 4(m), Fed. R. Civ. P., has expired. Plaintiff has not sought an extension of the time allowed under Rule 4(m). Accordingly, the action is dismissed as to Carter.

D.   CONCLUSION

For the foregoing reasons, the motion of the United States' for summary judgment is granted. All claims against Carter & Sons are dismissed pursuant to Rule 4(m), Fed. R. Civ. P. The Clerk shall enter judgment in favor of defendants.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       August 15, 2007